UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GAVIN L. KIRKLAND,

            Petitioner,           **DECISION AND ORDER**

    -vs-                     **No. 10-CV-0097(MAT)**

JAMES T. CONWAY,

            Respondent.
_____

## I.  Introduction

Petitioner Gavin L. Kirkland ("Kirkland" or "Petitioner") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the constitutionality of his 2004 conviction, following a jury trial in New York State Supreme Court (Erie County), on four counts of second degree robbery and one count of attempted second degree robbery. Petitioner is currently incarcerated at Attica Correctional Facility.

## II. Factual Background and Procedural History

On September 15, 2002 at 1:30 a.m., Buffalo police officers responded to two calls of robberies, one at Wegmans Grocery Store and the other at a Mobil convenience store. The police found a vehicle matching the description of the suspect's vehicle at Grant and Bird Streets, and a weapon was located in the vehicle. After obtaining a description of the suspect-a black male in a white shirt with dark vertical stripes-the police observed Kirkland, who matched that description. crossing the street. The officer called

-1-

to Kirkland, who promptly put his hands in the air and asserted that he was not a drug dealer. Kirkland, who stated that he was coming from a friend's house and was drunk, appeared to be perspiring. Kirkland had $127.00 in his hand and was not far from either robbery scene when he was stopped by the officers.

Within an hour of the robberies, Petitioner was taken to Wegmans and escorted into the lobby area where he was identified during a show-up procedure. Petitioner then was taken to the Mobil convenience store where two separate identifications were made.

In addition to the Wegmans and Mobil robberies, at trial the prosecution presented evidence of two other incidents. Two days before the Wegmans and Mobil robberies Kirkland entered a Wilson Farms convenience store and robbed the employees at gunpoint. Although Kirkland's face was partially covered, the store clerk was able to recognize Kirkland's "distinctive" voice. Kirkland was known to the clerk, who had dealt with him on numerous prior occasions.

On the day before the Wegmans and Mobil robberies, Petitioner entered a Subway restaurant and displayed a gun and ordered the employees to hand over money to him. The robbery was captured on the store's surveillance videotape.

In support of his alibi defense, Kirkland called his employer who testified that Kirkland was working at his barbershop on September 15, 2002, until about 10:45 p.m.  The employer was

mistaken about the date, because Petitioner was in custody at the time.

Petitioner was sentenced as a second felony offender to four fifteen-year determinate terms of incarceration for each of the robbery counts, and one seven year count for the attempted robbery count, all terms to be served consecutively. A mandatory five-year term of post-release supervision also was imposed.

On direct appeal, the Appellate Division, Fourth Department, agreed with Kirkland that the consecutive sentences rendered his aggregate term of imprisonment unduly harsh and severe. It therefore unanimously modified the judgment, as a matter of discretion in the interest of justice, so that the sentences imposed on each count of robbery in the second degree would run concurrently with respect to each other. As modified, the judgment was affirmed. People v. Kirkland, 49 A.D.3d 1260 (App. Div. 4th Dept. 2008). Leave to appeal was denied.

This timely habeas petition followed. For the reasons that follow, Kirkland's request for a writ of habeas corpus is denied.

**III. Analysis of the Petition**

**A.   Fourth Amendment Violation**

Petitioner claims he was subject to a seizure in violation of the Fourth Amendment because the police officers lacked reasonable suspicion to detain him. Habeas review of this claim is precluded under Stone v. Powell, 428 U.S. 465 (1976), in which the Supreme

Court held that so long as the State "has provided an opportunity for a full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal Habeas Corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial." Id. at 481, 482. The Second Circuit has interpreted Powell to mean that habeas review of Fourth Amendment claims is available only to the extent that a petitioner can demonstrate (1) that the state has provided no corrective procedures at all to redress the alleged Fourth Amendment claim; or (2) when the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process. Capellan v Riley, 975 F2d 67, 70 (2d Cir. 1992).

Here, Petitioner took advantage of the opportunity provided by N.Y. Crim. Proc. Law § 710.60, litigating his Fourth Amendment at the trial level and on appeal. He has not demonstrated, nor can he demonstrate, that there was an "unconscionable breakdown" in the corrective process afforded to him. Accordingly, the Court dismisses Kirkland's Fourth Amendment without reaching the merits.

## B.   Suggestive Identification Procedure

Petitioner claims that the show-up and photo array identification procedures were improper. On direct appeal, the

Appellate Division, Fourth Department, rejected these claim as follows:

> "Showup identifications 'are strongly disfavored but are permissible if exigent circumstances require immediate identification . . . or if the suspects are captured at or near the crime scene and can be viewed by the witness immediately'". Here, the two showup identifications were conducted approximately one mile from the crime scenes and one hour after the commission of the last robbery, and we conclude that none of the showup identifications was unduly suggestive. Also contrary to defendant's contention, the two photo array identifications of defendant by the two other robbery victims were not unduly suggestive. The individuals depicted in the two photo arrays have similar physical characteristics, and "the viewer's attention is not drawn to defendant's photo in such a way as to indicate that the police were urging a particular selection[.]"

People v. Kirkland, 49 A.D.3d at 1261 (citations and quotations omitted). This was a correct application of clearly established federal law which, in this case, holds that "[r]eliability is the touchstone for the admission of eyewitness identification testimony pursuant to the Due Process Clause of the Fourteenth Amendment." Brisco v. Ercole, 565 F.3d 80, 88 (2d Cir. 2009) (citing Raheem v. Kelly, 257 F.3d 122, 133 (2d Cir. 2001)).

The inquiry into the reliability of eyewitness identifications proceeds in two stages:

> The court must first determine whether the pretrial identification procedures unduly and unnecessarily suggested that the defendant was the perpetrator. If the procedures were not suggestive, the identification evidence presents no due process obstacle to admissibility; no further inquiry by the court is required, and the reliability of properly admitted eyewitness identification, like the credibility of the other parts of the prosecution's case is a matter for the

jury. If the court finds, however, that the procedures
were [unnecessarily] suggestive, it must then determine
whether the identification was nonetheless independently
reliable.

Brisco, 565 F.3d at 88 (quoting Raheem, 257 F.3d at 133; internal
citations, quotation marks and alterations omitted in Brisco).

"Under the first step of this analysis, an identification
procedure may be deemed unduly and unnecessarily suggestive if it
is based on police procedures that create 'a very substantial
likelihood of irreparable misidentification.'" Id. (quoting Simmons
v. United States, 390 U.S. 377, 384 (1968)). As the Appellate
Division recognized, a show-up procedure "is inherently suggestive
because it involves the presentation of a single suspect to a
witness by the police (as opposed to a lineup, in which several
individuals are presented to the police, only one of whom is the
suspect), and has accordingly been 'widely condemned,' Stovall v.
Denno, 388 U.S. 293, 302 (1967)," Brisco, 565 F.3d at 88. However,
it does not necessarily render an identification inadmissible. Id.
Rather, "'a claimed violation of due process in the conduct of a
confrontation depends on the totality of the circumstances
surrounding it,'" id. (quoting Stovall, 388 U.S. at 302). A show-up
identification procedure "violates due process only if it is an
'unnecessarily suggestive' procedure." Id. (quoting Stovall, 388
U.S. at 302; emphasis added in Brisco).

The Second Circuit has observed that "[e]xigent circumstances generally weigh in favor of concluding that a showup identification procedure was not unnecessarily suggestive, because a showup procedure may be necessary in such circumstances to quickly confirm the identity of a suspect, or to ensure the release of an innocent suspect." Brisco, 565 F.3d at 88-89 (citing Stovall, 388 U.S. at 302 (concluding that suggestive showup identification procedure did not violate due process because sole eyewitness to crime was at risk of dying and was unable to travel from her hospital bed to police station for lineup); United States v. Bautista, 23 F.3d 726, 730 (2d Cir. 1994) ("[A] prompt showing of a detained suspect at the scene of arrest has a very valid function: to prevent the mistaken arrest of innocent persons.") (internal quotation marks omitted)).

Here, the Appellate Division correctly found that the show-up procedures were not unduly suggestive. The two show-ups were conducted approximately one mile from the crime scenes and within one hour after the commission of the last robbery. See Brisco v. Ercole, 565 F.3d at 90 (concluding that the state court did not unreasonably apply federal law in finding that "'the [identification] procedure[] used w[as] reasonable under the circumstances' because it 'took place at the scene of the crime, within an hour of the commission of the crime, and in the context of a continuous, ongoing investigation'") (quotation to lower court

-7-

opinion omitted; alteration in original); cf. Bautista, 23 F.3d at 730 (finding show-up not unduly suggestive where procedure occurred shortly after a drug raid, a series of suspects "w[ere] presented [individually] . . . in handcuffs [to the eyewitness]; at night; in the custody of police officers; with [their] face[s] lit by flashlights; and in the presence of [a police officer] who, each time the [eyewitness] identified a suspect, radioed to his fellow officers, 'it's a hit'").

With regard to the two photo array identifications of defendant by the two other robbery victims, "the 'principal question' in determining suggestiveness is whether the appearance 'of the accused, matching descriptions given by the witness,' so stood out from the other participants as to suggest to the witness that the suspect was the culprit." United States v. Wong, 40 F.3d 1347, 1359-60 (2d Cir. 1994) (quoting Jarrett v. Headley, 802 F.2d 34, 41 (2d Cir. 1986)). Petitioner has not overcome the presumption of correctness afforded to the state court's factual findings regarding the physical similarities among the individuals depicted in the photo array. See Velazquez v. Poole, 614 F. Supp.2d 284, 325 (E.D.N.Y. 2007) ("The hearing court found that the individuals depicted were sufficiently similar to [petitioner] in general physical appearance . . . to negate any likelihood of misidentification. The hearing court's factual finding is presumed to be correct for purposes of habeas review. See 28 U.S.C.

§ 2254(e)(1); <u>Carroll v. Greene</u>, No. 04 CV 4342, 2006 WL 2338119, at *11 (S.D.N.Y. Aug. 11, 2006) (noting that a trial court's factual finding that "one of the fillers 'was not much lighter than [petitioner] in skin color' and, '[i]n any event, it doesn't appear to me that this line up is unduly suggestive' " was presumptively correct for habeas purposes). Here, Kirkland has not presented clear and convincing evidence that the state court's factual determination was erroneous. Furthermore, Kirkland has failed to articulate any basis for finding that the procedures used in presenting the arrays were improper. Thus, petitioner has failed to present any evidence that the photo arrays were unduly suggestive.

Where, as here, the petitioner fails to establish the impermissibly suggestive nature of the pretrial identification procedures, no further judicial inquiry into the independent reliability of the witness's identification is required. <u>See Jarrett v. Headley</u>, 802 F.2d at 42 (noting that "if the procedures were not impermissibly suggestive, independent reliability is not a constitutionally required condition of admissibility") (internal citations omitted). The question as to the reliability of the identification under these circumstances becomes an issue for the jury. <u>Id.</u> (citing <u>Foster v. California</u>, 394 U.S. 440, 442 n. 2 (1969)). Accordingly, the Court dismisses Kirkland's claims pertaining to the alleged unconstitutionality of the identification procedures and testimony obtained therefrom.

### C.    Verdict Against the Weight of the Evidence

Kirkland's contention that the verdicts were against the weight of the credible evidence is not a federal constitutional claim cognizable in a federal habeas proceeding. A "weight of the evidence" claim derives from New York Criminal Procedure Law ("C.P.L.") § 470.15(5), which permits an appellate court in New York to reverse or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence." N.Y. CRIM. PROC. LAW § 470.15(5). Thus, a "weight of the evidence" argument is a pure state law claim grounded in the criminal procedure statute. People v. Bleakley, 69 N.Y.2d 490, 495, 515 N.Y.S.2d 761, 508 N.E.2d 672 (N.Y.1987). In contrast, a legal insufficiency claim is based on federal due process principles. Id.

Because Kirkland's weight of the evidence claim implicates only state law, it is not cognizable in this federal habeas proceeding. See 28 U.S.C. § 2254(a) (permitting federal habeas corpus review only where the petitioner has alleged that he is in state custody in violation of "the Constitution or a federal law or treaty"); Lewis v. Jeffers, 497 U.S. 764, 780 (1990) (habeas corpus review is not available where there is simply an alleged error of state law); Ex parte Craig, 282 F. 138, 148 (2d Cir. 1922) (holding that "a writ of habeas corpus cannot be used to review the weight of evidence . . ."), aff'd, 263 U.S. 255 (1923). Therefore,

Kirkland's weight-of-the-evidence claim is dismissed as not cognizable.

### D.   Verdict Not Supported by Legally Sufficient Evidence

"'[T]he Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."'" Jackson v. Virginia, 443 U.S. 307, 315 (1979) (quoting In re Winship, 397 U.S. 358, 364 (1970)). However, "a properly instructed jury may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt." Id. at 317. Accordingly, "in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 . . ., the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Id. at 324.

The Jackson "inquiry does not require a court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." Jackson, 443 U.S. at 318 (quotation omitted; emphasis in original). Instead, the Supreme Court explained in Jackson, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Id. at

319. Thus, a petitioner bears a "very heavy burden" in attempting to obtain a writ of habeas corpus based upon an "insufficiency of the evidence claim." United States v. Carson, 702 F.2d 351, 361 (2d Cir.) (citations omitted), cert. denied, 462 U.S. 1108 (1983); accord, e.g., Fama v. Commissioner of Corr. Servs., 235 F.3d 804, 811 (2d Cir. 2000). The responsibility of resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from basic facts to ultimate facts always rests with the trier of fact. Id.

Here, Kirkland challenges the sufficiency of the evidence to support the conviction under count one of the indictment, arising out of the robbery of a Wilson Farms convenience store. The Appellate Division dismissed the claim as unpreserved, but Respondent has not argued that the state court's reliance upon the contemporaneous objection rule created a procedural default. Therefore, Respondent has waived the affirmative defense of procedural default, and the Court may consider this claim on the merits. Larrea v. Bennett, 2002 WL 1173564, at *12 n. 15 (S.D.N.Y. May 31, 2002) (citing Hooks v. Ward, 184 F.3d 1206, 1216 (10th Cir. 1999)) ("[S]tate-court procedural default . . . is an affirmative defense, and [ ] the state is 'obligated to raise procedural default as a defense or lose the right to assert the defense thereafter.' ") (quoting Gray v. Netherland, 518 U.S. 152, 165–66

(1996)). Accordingly, the Court considers the insufficiency-of-the-evidence claim on the merits.

To be guilty of second degree robbery under N.Y. Penal Law § 160.10(2)(b), "[i]n the course of the commission of the crime or of immediate flight therefrom, [the accused] or another participant in the crime: . . . (b) [d]isplays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm . . . ." N.Y. Penal Law § 160.10(2)(b). When a victim or 'a witness positively identifies a defendant as the man who committed a crime, the weight of the evidence of identification is for the jury unless it is incredible as a matter of law.'" People v. Seppi, 221 N.Y. 62, 68 (N.Y. 1917) (citation omitted).

Here, the victim, Lisset Roman ("Roman"), was familiar with Kirkland, having seen him in the store about 15 to 20 times over the course of the two to three weeks prior to the robbery. In addition, Roman had engaged in a lengthy conversation with Kirkland just days before the robbery about Kirkland's purchase of some "Hot Pockets" that allegedly were moldy. She described Kirkland as having a distinctive, "froggish" voice, which she immediately recognized when he demanded that she give him all her money. The victim was fully capable of making a reliable voice identification. Moreover, although all of Petitioner's face was not visible during the robbery, the victim did recognize the portions that she could

see, and she identified him from a photo array four days after the incident.

Kirkland's argument regarding the insufficiency of the identification evidence is based solely on attacking the credibility of the complaining witness. This argument was properly made to the jury, which rejected it. It is not the province of a federal habeas court to revisit a fact-finder's credibility determinations. See Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996) (dismissing habeas claim because "assessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal;" deferring to the jury's assessments of the particular weight to be accorded to the evidence and the credibility of witnesses). Because Kirkland's argument concerning the sufficiency of the evidence is without merit and, moreover, asks the Court to consider issues not reviewable in a habeas proceeding, it is dismissed.

### E.   Ineffective Assistance of Trial Counsel

Petitioner claims that trial counsel was ineffective in calling Jerry Kelly ("Kelly"), who testified, incorrectly, that Petitioner had been working at his barbershop on September 15, 2002. Petitioner contends that this undermined his alibi defense.

To demonstrate a violation of his Sixth Amendment right to the effective assistance of counsel, a petitioner must show that his attorney's representation was deficient in light of prevailing

professional norms and that prejudice inured to him as a result of that deficient performance. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). To satisfy the first prong, counsel's conduct must have "so undermined the proper functioning of the adversarial process" that the process "cannot be relied on as having produced a just result[.]" <u>Id.</u> at 686. As to the second prong, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional" conduct, the result of the trial would have been different. <u>Id.</u> at 694.

The presentation of a false alibi defense can constitute ineffective assistance of counsel. <u>See</u> <u>Henry v. Poole</u>, 409 F.3d 48 (2d Cir. 2005). In <u>Henry</u>, trial counsel's performance was deemed to have been outside realm of professional competence when counsel elicited an alibi for the wrong time period, and continued to pursue the defense even after it should have been clear that alibi addressed only the later hours of the day. In fact, the robbery of which Henry was accused occurred in early morning hours, and the prosecution had highlighted that discrepancy. Counsel also argued that the jury's decision would "boil down to" whether it believed the victim or the alibi witness, even though the alibi testimony did not contradict the victim's testimony. The Second Circuit concluded that under those circumstances, both prongs of <u>Strickland</u> had been met. <u>Henry</u>, 409 F.3d at 64-65.

In contrast to Henry, however, Kirkland's counsel did not persist in asserting the defense after it became obvious the witness was mistaken. Cf. Henry, 409 F.3d at 64. Instead, counsel entered into a stipulation regarding Kirkland's custodial status on the relevant date. Counsel then explained to the jury during his summation that the witness had been mistaken.  In further contrast to Henry, Kelly's testimony was relevant and exculpatory to Petitioner irrespective of whether it supported an alibi defense, because Kelly had seen Petitioner the night of the robberies. Kelly's testimony thus would have explained Petitioner's presence at the location where he was apprehended by police, and would have explained why he possessed a sum of cash (his wages from his employment with Kelly). Kelly also indicated that Petitioner liked to go to a nearby pizza parlor, and Petitioner had told the police he was on his way to get pizza.

Additionally, Kirkland contends that trial counsel was ineffective in failing to object to the allegedly unfair marshaling of the evidence by the trial court. In order to obtain habeas relief based on an error in the state court's instructions to the jury, petitioner must show that the error violated a right guaranteed by federal constitutional law. See Cupp v. Naughten, 414 U.S. 141, 146 (1973); Casillas v. Scully, 769 F.2d 60, 63 (2d Cir. 1985). The relevant issue is not whether the instruction was "undesirable" or "erroneous," but rather "whether the ailing

instruction by itself so infected the entire trial that the resulting conviction violates due process." Cupp, 414 U.S. at 147.

Here, Kirkland has not shown an error of state law, let alone one of constitutional magnitude. The trial court properly instructed the jury to carefully evaluate the identification proof and the competing contentions of both parties. Kirkland has not demonstrated that any marshaling of the evidence "deflected [the jury] from a conscientious discharge of their responsibility to find the facts, apply the law, and reach a fair verdict." Gayle v. Scully, 779 F.2d 802, 806 (2d Cir. 1985) (citations omitted). In sum, trial counsel was not professionally unreasonable in failing to object, and Petitioner was not prejudiced by his omission.

Finally, counsel was not ineffective for declining to request an alibi jury charge. An "alibi jury instruction" is one in which the trial court instructs the jury that the prosecution has the burden of "disproving defendant's alibi" and is appropriate when a defendant presents "legally sufficient [evidence of] the defense of alibi." People v. Warren, 76 N.Y.2d 773, 775 (N.Y. 1990). The New York Court of Appeals has held that, even where a defendant presents legally sufficient evidence to establish an alibi defense, the failure to give an alibi jury instruction is not reversible error where "the charge as a whole conveyed the necessary information regarding the [prosecution's] burden of proof." People v. Warren, 76 N.Y.2d at 775.

"As in <u>Warren</u>, the absence of the 'alibi jury instruction' caused no prejudice to [Petitioner] since 'the charge as a whole conveyed the necessary information regarding the [prosecution's] burden of proof.'" <u>Cruz v. Greiner</u>, No. 98 CIV. 7939(AJP), 1999 WL 1043961, at *18 (S.D.N.Y. Nov. 17, 1999)(quotation omitted); <u>accord</u> <u>Parreno v. Annetts</u>, No. 04 Civ.10153(GWG), 2006 WL 689511, at *13 (S.D.N.Y. Mar. 20, 2006) (same).

## F.   Violation of Equal Protection During Jury Selection

On direct appeal, the Appellate Division rejected Kirkland's contention that the trial court erred in denying his challenge under <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986), finding that Kirkland "failed to establish '[t]he more difficult aspect of the prima facie case delineated in <u>Batson</u>[, i.e.,] the second element—a showing of 'facts and other relevant circumstances' that would support an inference of impermissible discrimination[.]'" <u>People v.</u> <u>Kirkland</u>, 49 A.D.3d at 1261 (quotation and citations omitted; alterations in original).

During jury selection, defense counsel stated that the prosecution did not favor seating educated jurors, particularly black jurors who were educated. Defense claimed that a minority juror was excluded even though she had a master's degree and argued that if the juror had been "very ignorant and black," she would not have been challenged. Defense counsel also charged that the District Attorney's office had a policy of excluding black jurors.

The prosecutor responded that no such policy existed, and pointed out that she had not challenged two other black jurors, one of whom had a master's degree. The prosecutor contended that Kirkland had not shown any racially-motivated pattern of peremptory strikes. The trial court denied the defense motion, finding that a prima facie case under <u>Batson</u> had not been made.

The state courts did not unreasonably apply <u>Batson</u> in concluding that Kirkland failed to establish a prima facie case. <u>See</u> <u>Overton v. Newton</u>, 295 F.3d 270, 276 (2d Cir. 2002). "'[T]he threshold decision concerning the existence of a prima facie case of discriminatory use of peremptory challenges involves both issues of fact and an issue of law.'" <u>Id.</u> (quoting <u>United States v. Alvarado</u>, 891 F.2d 439, 443 (2d Cir. 1989), <u>vacated on other grounds</u>, 497 U.S. 543 (1990)). In <u>Overton</u>, the prosecutor used four peremptory challenges in the first round of jury selection and struck two of five black potential jurors from the venire; three black jurors were seated. In the second round, there were six black potential jurors in the box; one was struck for cause and the other five were excluded as a result of peremptory strikes by the prosecutor. At that point, petitioner Overton made his <u>Batson</u> challenge. The Second Circuit could not say that, in denying the challenge at that juncture, the trial court unreasonably applied the <u>Batson</u> principle. <u>Overton</u>, 295 F.3d at 279.

Similarly, the record here reveals that the prosecutor elected not to challenge at least two black jurors. Defense counsel came forward with no evidence, apart from his own assertions, that the prosecutor's office had a policy of engaging in discrimination during jury selection. Petitioner bore the burden of articulating and developing the factual and legal grounds supporting his <u>Batson</u> challenge before the trial court, but he failed to do so. Under these circumstances, the trial judge's refusal to implement the <u>Batson</u> burden-shifting framework was not an unreasonable application of the requirements of Equal Protection as set forth in <u>Batson</u>. <u>See</u> <u>Overton</u>, 295 F.3d at 280.

### G.   Erroneous Jury Verdict Sheet

Petitioner claims that, as annotated, the jury verdict sheet violated N.Y. Crim. Proc. Law § 310.20. Decisions of the New York Court of Appeals make it clear that, absent consent of defense counsel, it is per se reversible error to give a jury a verdict sheet that contains anything other than what is permitted by C.P.L. § 310.20(2). <u>Bonton v. Ercole</u>, No. 08-CV-526 (ARR), 2008 WL 3851938, at *18 (E.D.N.Y. Aug. 18, 2008). Under C.P.L. § 310.20, as it was in effect at the time of Petitioner's trial, when a verdict sheet contains "two or more counts charging a violation of the same section of a law . . ., the court may set forth the dates, names of complainants or specific statutory language, without defining terms, by which the counts may be distinguished; provided, however,

that the court shall instruct the jury in its charge that the sole purpose of the notations is to distinguish between the counts charging a violation of the same section of the law." N.Y. Crim. Proc. Law § 310.20(2).

Here, the Appellate Division concluded that Petitioner's challenge to the verdict sheet was unpreserved for review due to the lack of a contemporaneous objection, N.Y. Crim. Proc. Law § 470.05(2). People v Kirkland, 49 A.D.3d at 1261. Respondent argues that the claim is procedurally defaulted because the Appellate Division relied upon an adequate and independent state ground-namely, the contemporaneous objection rule-to dismiss it.

"[F]ederal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim." Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990) (per curiam). Here, the Appellate Division's reliance on the contemporaneous objection rule was both an independent and adequate basis for its decision. Accordingly, the Court agrees with Respondent that Kirkland's claim regarding the jury verdict sheet is procedurally defaulted.

A petitioner may overcome a procedural default by demonstrating cause for the default and prejudice attributable thereto, or that a fundamental miscarriage of justice will occur should the habeas court decline to review the merits of his claim.

Harris v. Reed, 489 U.S. 255, 262 (1989) (citations omitted); accord Dretke v. Haley, 541 U.S. 386, 393 (2004).

Kirkland has not attempted to show cause or prejudice, and neither is apparent on the record before the Court. Nor has Kirkland demonstrated that a constitutional error has resulted in the conviction of someone who is actually innocent, so as to warrant invocation of the "fundamental miscarriage of justice" exception. Accordingly, Kirkland's claim alleging a violation of C.P.L. § 310.20(2) is dismissed as subject to an unexcused procedural default.

## IV.  Conclusion

For the reasons stated above, Gavin L. Kirkland's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the Petition is dismissed. Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, the Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2).  The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal in forma pauperis.

**SO ORDERED.**

S/Michael A. Telesca
_____
MICHAEL A. TELESCA
United States District Judge

DATED:     July 25, 2011
           Rochester, New York

-22-